DIRECT ENTERPRISES, INC., OLYMPUS   )
SEED TREATMENT FORMULATOR, INC.,   )
  )
              Plaintiffs,   )
  )     No. 1:15-cv-01333-JMS-TAB
        vs.   )
  )
SENSIENT COLORS LLC, SPECTRA   )
COLORANTS, INC.,   )
  )
           Defendants.   )
  )

## ORDER ON PENDING MOTIONS

### I. Introduction

Plaintiffs Direct Enterprises, Inc. and Olympus Seed Treatment Formulator, Inc. commenced this action against Defendant Sensient Colors LLC, asserting claims for breach of contract, breach of warranties, and fraud. Plaintiffs purchased colorants from Sensient to add to agricultural seed treatments Plaintiffs sold to their customers. They allege that some of the colorants were defective and caused damage to the seed treatments. Third-Party Defendant Spectra Colorants, Inc. manufactured the colorants and sold them to Sensient. This cause is before the Court on three motions: (1) Plaintiffs' Motion to Modify the Amendment Deadline to File a Fourth Amended Complaint, (2) Defendant Sensient's Motion for Remedy for Plaintiffs' Loss of Evidence, and (3) Plaintiffs' Motion for Remedies for Spoliation of Evidence. For the reasons that follow, the motions are denied.

### II. Background

Plaintiffs filed their complaint against Sensient in August 2015. Because they had not sufficiently alleged a jurisdictional basis, the Court ordered them to file an amended complaint.

They did so in September 2015. Plaintiffs filed a second amended complaint in December 2015 to address issues identified by Sensient that may have been raised in a motion to dismiss. In June 2016, Sensient filed its amended answer and third-party complaint, alleging that Spectra was obligated to defend and indemnify Sensient against Plaintiffs' claims.

The Court held a pretrial conference in November 2016 in an effort to assist the parties with a discovery dispute regrading Plaintiff's discovery responses that asked Olympus to identify by lot number, delivery date, and product description, each colorant that it purchased from Sensient that it contends "failed to perform as expected or warranted." The Court directed Olympus to "conduct further investigations to determine the most specific identifications that it can provide of the *defective* colorants that it purchased" and supplement its responses by November 18, 2016. [Filing No. 72 at 3.]

Olympus' supplemental answer to the interrogatory stated:

Around October 2, 2012 Olympus had used its previous orders of red colorant from Sensient and requested future shipments of red pearl colorant. On information and belief, the faulty colorants consist of those that were shipped and delivered after October 2, 2012, consisting of colorants with a pearlescent additive and particularly including a red pearlescent colorant that was manufactured with excessive amounts of ammonia.

[Filing No. 145-1 at 2.]

In January 2017, Plaintiffs moved for leave to file a third amended complaint, asserting that the proposed amendments would refine the factual basis for their claims and refine their theories of liability. In particular, they sought to plead their contractual relationship with Sensient "with additional specificity," add facts pertaining to the fraud claims, add fraud claims, and add claims under the Indiana Products Liability Act. Plaintiffs filed the motion before the January 19, 2017, deadline for motions to amend the pleadings. The Court granted the motion,

2

and in February 2017 Plaintiffs filed their third amended complaint, which is their fourth

complaint in this case. Four counts of the third amended complaint allege that "the pearlescent

colorants" destroyed Plaintiffs' seed treatments. [Filing No. 95 ¶¶ 91, 96, 107.] The other three

counts—claims for breaches of implied warranties and product liability claim—likewise are

clear that the alleged culprits were the "pearlescent colorants". [*Id.* ¶¶ 113, 120, 127-31.]

Defendants then filed motions to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6). Sensient asserts several grounds for dismissing the fraud and

constructive fraud claims, including noncompliance with Rule 9. Sensient also seeks dismissal

of the claims for breach of contract, breach of express warranty, and product liability. Sensient

argues that all claims by Direct Enterprises, Inc. should be dismissed because the complaint does

not allege a factual basis for third-party beneficiary status. Spectra seeks dismissal of the

products liability claim against it, arguing that the claims are time barred.

In February and March of this year, Sensient supplemented its discovery responses. In

early April, Spectra provided its first supplemental discovery responses.

On May 5, 2017, Plaintiffs filed their Motion to Modify Amendment Deadline to File a

Fourth Amended Complaint, contending that they recently received new evidence about the

formulas, ingredients, and manufacturing of the colorant blends involved in this case. They

maintain that the evidence directly supports their pending claims.

The May 19, 2017, discovery deadline has passed. The dispositive motion deadline is

August 21, 2017. The case is set for trial in January 2018.

### III.  Motion to Modify Amendment Deadline and File Fourth Amended Complaint

In moving to modify the amendment deadline, Plaintiffs assert that the recent discovery

from both Defendants provided the formulas, ingredients, product codes, and manufacturing

codes that allowed Plaintiffs to correlate shipments and containers of colorants. They state that the discovery also provided the correlation between manufacturing codes, product sample codes, finished product codes, and the acrylic-surfactant distinction between different products. [Filing No. 163 at 7.] The discovery, according to Plaintiffs, also indicated that every batch of colorant is different and that basic red and pearlescent red shared a common ingredient susceptible to "thickening." [*Id.* at 9.] They argue that the proposed amendments add facts supporting their claims and refute Sensient's motion to dismiss. They contend that Defendants will not be prejudiced by the proposed amendments because the amendments are based on their own documents. Plaintiffs also argue that Defendants cannot claim prejudice because they have not filed an Answer to the third amended complaint and are in default.

Defendants oppose Plaintiffs' motion. Sensient argues that the new evidence is not important and the proposed amendments are not justified. It also argues that if the amendments are allowed, new discovery, new deadlines, and a new trial date will be necessary. Sensient maintains that Plaintiffs have limited their claims in this case to the pearlescent colorants but now seek to expand their claims to include the non-pearlescent colorants, add new theories of fraud, and allege another express warranty claim, all of which is untimely and prejudicial. Likewise, Spectra contends that Plaintiffs have limited themselves to certain legal theories and if the amendments are allowed, nearly all the discovery that has taken place and many of the pleadings will have been a waste of time and resources.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). When a motion for leave to amend is filed after the deadline to amend, Rule 16(b)(4) applies and requires a showing of "good cause." Fed. R. Civ. P. 16(b)(4); *see Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016). In

deciding whether a party has shown good cause, "the primary consideration … is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011).

The disclosure of new evidence after the deadline for amendments can constitute "good cause" for seeking leave to amend after the deadline in the scheduling order. *See, e.g.*, *CMFG Life Ins. Co. v. RBS Secs. Inc.*, No. 12-cv-037-wmc, 2013 WL 4483068, at *16 (W.D. Wis. Aug. 19, 2013) (allowing supplemental allegations that summarized evidence disclosed in discovery); *Armitage v Apex Control Sys., Inc.*, Cause No. 2:08-cv-45-WTL-WGH, 2010 WL 4318846, at *1-*2 (S.D. Ind. Oct. 26, 2010) (finding good cause where plaintiff discovered basis for his new claims through discovery). To the extent the late discovery responses disclosed a factual basis for a newly asserted claims, and that basis was not previously known and could not have been known to Plaintiffs, this would weigh in favor of finding good cause needed to satisfy Rule 16(b)(4). However, as Spectra points out, several of the proposed amendments are unrelated to the recent discovery and are based on information available to Plaintiffs long ago. For example, Plaintiffs' knowledge of their timeline for manufacturing and shipping seed treatment blends is not dependent on the recent discovery from Defendants. [Filing No. 131-5 at 11-12, ¶¶ 58-61.] Plaintiffs cannot use the late discovery responses as a justification to bolster their factual allegations where the information sought to be added was already available to them.

Even assuming that Plaintiffs can clear Rule 16(b)(4)'s hurdle, they must show that the proposed amendments should be allowed. Under Rule 15(a), a district court has broad discretion to deny leave to amend where there is a good reason such as undue delay, repeated failure to cure deficiencies, or undue prejudice. *See, e.g.*, *Mulvania v. Sheriff of Rock Is. Cnty.*, 850 F.3d 849, 855 (7th Cir. 2017); *Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017). Even without the newly disclosed evidence, Plaintiffs should have known or could have known

whether the non-pearlescent colorants damaged their seed treatments. They certainly knew which seed treatments were damaged: they had customer invoices, credit memos, returns, and shipping records to establish which seed treatments were defective and returned. Plaintiffs could have identified which colorants were used in the damaged treatments by referring to Olympus's blend sheets.[1] Also, as Sensient asserts, Plaintiffs could have provided a declaration indicating "what they knew, when they knew it, and what they did to investigate the foundation for their new legal theories," [Filing No. 145 at 6], in an effort to support their late attempt to amend their pleading for a fourth time, but they did not, and the opportunity for doing so has passed.

Moreover, allowing an amendment at this late stage of the proceedings would unduly prejudice Defendants.[2] The deadline to amend the pleadings was January 19, 2017. Discovery is now closed, and the August 21, 2017 dispositive motion deadline is fast-approaching. Plaintiffs already have had several opportunities to cure any deficiencies in their complaint and add new theories. Plaintiffs' theory has been that only the pearl colorants were defective, as indicated in Olympus's supplemental interrogatory answer provided in response to the Court's order and in their third amended complaint. Plaintiffs protest that their pleadings have included

---

[1] Olympus prepared blend sheets for each new batch of seed treatment; the blend sheets include the date of blending and the names and lot numbers of each blend ingredient.

[2] In arguing that Defendants cannot be prejudiced because they are in default, Plaintiffs cite *General Mills, Inc. v. Kraft Foods Global, Inc.*, 495 F.3d 1378 (Fed. Cir. 2007). The case decided that Rule 12(a)(4) does not enlarge the time for filing an answer to an amended complaint when the time for responding to the original complaint has passed. *Id.* at 1379. But contrary authority exists. *See, e.g.*, *Ello v. Brinton*, Cause No. 2:14-CV-299-TLS, 2015 WL 7016462, at *4 (N.D. Ind. Nov. 10, 2015) (holding that the time for filing an answer to the amended complaint was tolled because defendant filed a partial motion to dismiss before the deadline for filing a responsive pleading); *Shah v. KIK Int'l LLC*, No. 3:06-CV-712 RLM, 2007 WL 1876449, at *1 (N.D. Ind. June 26, 2007) (holding the pendency of a motion to dismiss tolls the time for filing an answer to amended counterclaims). These authorities are more persuasive because the same reasoning for tolling the time to file an answer applies when an amended complaint has been filed. Requiring an answer to an amended pleading when a motion to dismiss pends "potentially results in duplicative pleadings, confusion regarding the proper scope of discovery, unnecessary expenses, and wasted time." *Shah*, 2007 WL at *1. Defendants are not in default.

all colorants and were not limited to the pearlescent colorants.  However, the key allegations in each claim of the third amended complaint identify only the pearlescent colorants as being at issue.  [*See* Filing No. 95, ¶ 91 (fraud/constructive fraud claim alleging "Plaintiffs' seed treatments were destroyed by the pearlescent treatments"), ¶ 96 (breach of contract claim alleging "pearlescent colorants …were unsuitable for seed treatments" and destroyed them), ¶ 107 (express warranty claim as to "pearlescent colorants"), ¶ 113 (implied warranty as to "pearlescent colorants"), ¶ 120 (alleging implied warranty as to "pearlescent colorants"), ¶ 127-30 (product liability claims as to "pearlescent colorants").]  If Plaintiffs were allowed to change their theories, Defendants likely would have to conduct additional discovery on Plaintiffs' use of the non-pearl colorants.[3]  But discovery has closed, and it would have to be re-opened.  What's more, the need for any further discovery almost unavoidably would affect the recently extended August 21, 2017 dispositive motion deadline.  The time period between that deadline and the January trial setting is quite short already.  Allowing an amendment to the complaint at this point in time would ultimately jeopardize the trial setting.

Leave to amend should be freely given when justice requires, but justice does not require that Plaintiffs be allowed to amend their pleadings and file a fifth complaint at this late stage of the proceedings.  Therefore, even if Plaintiffs have shown good cause for seeking to amend after the deadline for amendments has passed, the motion to modify the amendment deadline to file a fourth amended complaint will be denied.

---

[3] For example, Sensient asserts that it would request shipping, sales, and credit records corresponding to the seed treatments made from non-pearl colorants.  Sensient anticipates having to take additional depositions of Plaintiffs' President and COO to inquire about the non-pearl colorants.  And it argues that it has not explored its main defense with respect to the non-pearl colorants—that the seed treatments hardened because Plaintiffs failed to advise their customers they had a short shelf-life.  Plaintiffs dispute that further discovery would be required, maintaining that they already have provided invoices, credit memos, etc. for all damaged seed treatments regardless of the colorant used and that Sensient has conducted ample discovery on the shelf-life defense.

**IV. Spoliation of Evidence**

Because the Court exercises diversity jurisdiction in this matter, spoliation is governed by state law. *Allstate Ins. Co. v. Sunbeam Corp.,* 53 F.3d 804, 806 (7th Cir. 1995) (holding state law governs spoliation in diversity case). Under Indiana law, spoliation is "'[t]he intentional destruction, mutilation, alteration, or concealment of evidence.'" *Cahoon v. Cummings*, 734 N.E.2d 535, 545 (Ind. 2000) (quoting Black's Law Dictionary 1409 (7th ed. 1999)); *see also J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1032 (7th Cir. 2005). Where a party has exclusive possession of evidence, *Cahoon*, 734 N.E.2d at 545, the "intentional … spoliation of that evidence may be used to establish an inference that the spoliated evidence was unfavorable to the party responsible." *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 351 (Ind. 2005). "[E]vidence of spoliation does not relieve a party of the burden of proving [its] case." *Passmore v. Barrett*, Cause No. 2:13-cv-290, 2015 WL 2412709, at *2 (N.D. Ind. May 21, 2015). The trial court has discretion to instruct the jury on the adverse inference that may arise from spoliation. *J.S. Sweet Co.*, 400 F.3d at 1032.

The Court may also have the inherent power to sanction a party for misconduct, including the spoliation of evidence. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (recognizing the district court's inherent power to sanction parties in appropriate cases); *Smith v. Borg-Warner Auto. Diversified Transmission Prods. Corp.*, No. IP 98-1609-C-T/G, 2000 WL 1006619, at *9 (S. D. Ind. July 19, 2000) (same). A court's inherent powers, however, "must be exercised with restraint and discretion." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).

### A. Sensient's Motion for Remedy for Plaintiffs' Loss of Evidence

Sensient moves for an order prohibiting Plaintiffs from seeking consequential damages related to seed treatments identified on lost or misplaced blend sheets (or build sheets). [Filing

No. 124.]  Olympus prepared a blend sheets for each new batch of seed treatment; the blend sheets include the date of blending and the names and lot numbers of each blend ingredient. Olympus's Chief Operating Officer Dennis Tauchen used the blend sheets to prepare a chart or spreadsheet of the credits Plaintiffs offered their customers for "bad drums" of seed treatment. Tauchen testified that he had a blend sheet for each entry on his chart.  In order to evaluate the chart and prepare its own damages analysis, Sensient requested the blend sheets Tauchen had used.  Plaintiffs produced some, but not all of them because some were lost or misplaced.

Sensient claims prejudice because it asserts the blend sheets are the only contemporaneously prepared record of whether a particular seed treatment was blended with pearl or non-pearl colorant.  Sensient maintains it needs the blend sheets to ensure that Plaintiffs' calculation of the value of the damaged seed treatments and thus consequential damages excludes seed treatments made from non-pearl colorants.

Several considerations weigh in favor of denying Sensient's motion.  First, although the blend sheets may be the only contemporaneous records of whether particular seed treatments were blended with pearl or non-pearl colorant, other records exist from which Defendants can test Plaintiffs' calculations of the damaged seed treatments.  These include Olympus's customer invoices, credit memos, returns, and shipping records, which can be used to identify damaged seed treatments.  Sensient can offer testimony from its employees and Plaintiffs' employees in order to identify the damaged seed treatments and types of colorants used.  Also, Plaintiffs state that they still have some of the defective seed treatments in storage and have offered to allow Sensient to inspect them.  (Sensient has declined.)

Furthermore, Sensient has not presented any evidence to suggest that the missing blend sheets were intentionally, rather than accidentally or negligently, destroyed.  Although Sensient

argues that a sanction for spoliation is not limited to intentionally destroyed evidence, neither case it cites applies Indiana law and both cases involve more egregious conduct by the party ultimately sanctioned.  *See Langley v. Union Elec. Co.*, 107 F.3d 510, 512 (7th Cir. 1997) (loss of furnace where family was poisoned by carbon monoxide fumes presumably caused by an unventilated furnace); *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 221-22 (7th Cir. 1992) (in one case considered on appeal, plaintiffs' experts' inspection of the motor vehicle involved in the car accident destroyed allegedly defective axle and violated a protective order; in the other case, the defendant's gross negligence resulted in the loss of material and irreplaceable evidence needed to prove a manufacturing or design defect and also violated a protective order).  *Gribben v. Wal-Mart Stores* may have suggested that both negligent and intentional destruction of evidence could support a spoliation claim, but the plaintiff in that case claimed only intentional spoliation, 824 N.E.2d at 350, and the case does not hold that negligent destruction of evidence warrants a sanction.  Similarly, in *Smith v. Borg-Warner*, there was no dispute that the destruction of evidence was intentional rather than inadvertent.  2000 WL 1006619, at *9.

Even assuming that the negligent loss of evidence could support a spoliation claim, as Sensient acknowledges, any sanction "must be proportionate to the circumstances surrounding the failure to comply with discovery."  *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1382 (7th Cir. 1993); *see also Roadway Exp.*, 447 U.S. at 764 (stating a court's inherent powers "must be exercised with restraint and discretion").  The remedies Sensient seeks would be too harsh under the circumstances in this case, particularly where there is no hint that Plaintiffs willfully lost or misplaced the blend sheets, and other evidence is available to Defendants to challenge Plaintiffs' consequential damages calculations.  Defendants likely will be able to present evidence at trial that Plaintiffs had exclusive possession of the blend sheets and then misplaced or lost some of

them.  And they can challenge the accuracy of Plaintiffs' consequential-damages calculations

given the missing records as well as by pointing out information in the blend sheets that Sensient

claims shows that its colorants were not used in all of the defective seed treatments.  For

example, on two blend sheets Sensient's name is crossed off and replaced with "Uni," which

could be inferred to mean Universal, another company that Olympus's head blender, Don

Bradley, testified supplied red colorant to Olympus.  In sum, the Court finds that Sensient's

motion for remedy for Plaintiffs' loss of evidence should be denied.

### B.   Plaintiffs' Motion for Remedies for Spoliation of Evidence

Spectra retained a sample of each lot of colorant it made.  All but one of the samples

were delivered to Sensient and then discarded before this litigation began, but after Sensient was

put on notice that there would be "claims."  Plaintiffs contend that this destruction is evidentiary

spoliation.  They claim prejudice, arguing that without the samples, they cannot analyze the

ingredients; compare formulations; analyze characteristics such as stability, pH, viscosity, and

settling; or compare the samples to Sensient's certificates of analysis for individual lots.

Plaintiffs request an inference that the destroyed evidence was unfavorable to Sensient and a

factual finding that the retained samples show the colorant lots they represent were defective and

damaged Plaintiffs' seed treatments.

Defendants respond that from the beginning, Plaintiffs placed only one colorant at issue:

pearlescent red colorant sold in 250 gallon totes.  Sensient contends that Plaintiffs have no

evidence that Sensient knew or should have known to preserve the blue and green colorants.  It

may be that Sensient had no reason to know that any colorant other than the pearlescent red was

at issue.[4]  Nonetheless, Sensient obtained from Spectra the retained samples of all colorants for inspection and analysis.

Spectra maintains that it produced documents that contain the ingredients, formula, production files, and characteristics of each lot of colorant Plaintiffs purchased from Sensient, thus lessening any prejudice from the failure to preserve the samples.  [*See* Filing No. 94 at 2 (ordering Spectra to produce formulas and related documents for Blue Pearl and Green Pearl).] Plaintiffs' assertion that without the samples they cannot "analyze the ingredients," "compare formulations," or "analyze characteristics" of the colorants is not supported by any affidavit or other evidence.  However, the Court acknowledges that Plaintiffs suggest Spectra deviated from the formulas and argue they could have analyzed the retained samples to determine whether the formula ingredients were actually used in the production batches.

But even though Sensient discarded the retained samples (and there is no allegation that this was accidental) with knowledge that Plaintiffs were considering making claims against it, the imposition of sanctions is unwarranted.  It would be impossible to allow an inference that the spoliated evidence was unfavorable to Sensient without also raising the inference that the evidence was unfavorable to Spectra too.  Similarly, a factual finding that the retained samples would show the colorant lots were defective and damaged the seed treatments would punish Spectra as well as Sensient.  But Spectra did not have possession of the retained samples when they were discarded and Spectra was not responsible for their destruction.  Spoliation requires possession of the evidence, *Cahoon*, 734 N.E.2d at 545, and spoliation may be used to draw an

---

[4] Spectra argues Sensient retained the samples for "a significant time" and Plaintiffs knew Sensient had them, but Plaintiffs failed to request Sensient to preserve the samples.  *Thompson ex rel. Thompson v. Owensby*, 704 N.E.2d 134, 141 (Ind. Ct. App. 1998) (Staton, J., concurring), cited for the proposition that the Plaintiffs had a duty to ask that Sensient preserve the samples, is inapplicable.  That case involved the defendant's liability insurer's duty to preserve evidence that it had obtained after litigation between the parties had begun; Sensient was not a third-party in possession of evidence.

adverse inference only against "the party responsible." *Gribben*, 824 N.E.2d at 351. Therefore, there is no basis for drawing an adverse inference against Spectra or otherwise sanctioning Spectra for spoliation.

Furthermore, the Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice." Fed. R. Evid. 403. Because Spectra was not responsible for the destruction of the retained samples and an adverse inference could not be drawn against Sensient without also allowing one against Spectra, allowing an adverse inference against Sensient would be unduly prejudicial to Spectra. *See Passmore v. Barrett*, Cause No. 2:13-cv-290, 2015 WL 2412709, at *3 (N.D. Ind. May 21, 2015) (denying motion for adverse inference based on spoliation of evidence where it would be difficult to draw an adverse inference against the responsible party without also drawing one against a party who had no possession or control over the spoliated evidence). Therefore, the Court in its discretion declines to allow an adverse inference or other sanction against Sensient.

## V. Conclusion

Plaintiffs have not shown good cause to modify the deadline for amendments to the pleadings, so their Motion to Modify the Amendment Deadline to File Fourth Amended Complaint [Filing No. 131] is denied. Sensient has not shown that Plaintiffs intentionally destroyed any blend sheets and the requested remedy would be too harsh under the circumstances. Sensient's Motion for Remedy for Plaintiffs' Loss of Evidence [Filing No. 124] is therefore denied. Although a closer question, Plaintiffs' Motion for Remedies for Spoliation of Evidence [Filing No. 132] is also denied, given the unavoidable prejudice to Spectra who bears no fault in the destruction of the colorant samples.

Dated: 7/13/2017

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution to all counsel of record via CM/ECF.