UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIRECT ENTERPRISES, INC., OLYMPUS SEED TREATMENT FORMULATOR, INC., Plaintiffs, v. SENSIENT COLORS LLC, Defendant. | ) | No. 1:15-cv-01333-JMS-TAB |
| SENSIENT COLORS LLC, Third Party Plaintiff, v. SPECTRA COLORANTS, INC., Third Party Defendant. | ) | |

**ORDER**

Plaintiffs Direct Enterprises, Inc. ("DEI") and Olympus Seed Treatment Formulator, Inc. ("Olympus") (collectively "Plaintiffs") are companies that specialize in blending and selling treatment mixtures for seeds. As is relevant here, Defendant and Third-Party Plaintiff Sensient Colors LLC ("Sensient") sells colorants that are used as additives in seed treatment blends, and Defendant and Third-Party Defendant Spectra Colorants, Inc. ("Spectra") manufactures colorants. This matter arises primarily from a dispute among the parties regarding a batch of allegedly defective colorants manufactured by Spectra that Plaintiffs purchased from Sensient. Plaintiffs and Sensient have reached a settlement agreement, and the only issue remaining for the Court's resolution is Sensient's claim against Spectra for contractual duties of indemnification and defense.

Sensient has moved for summary judgment on that claim, and for the reasons described below, the Court denies that motion.

## I. BACKGROUND

Plaintiffs market and distribute farming inputs and agricultural products, including seed treatments such as fungicides and pesticides. [Filing No. 189-1 at 3-4.] By federal regulation, seeds that are treated with compounds that are poisonous to humans and animals must be colored, so that persons handling the seeds are aware of their potential toxicity. [Filing No. 189-1 at 5.] Several of Plaintiffs' seed treatments contain compounds that have a degree of toxicity to humans and animals, and in 2012, Plaintiffs sought to purchase colorants to add to their treatment blends. [Filing No. 189-1 at 6-7.]

Defendant Sensient is a supplier of colorants, which it promotes for use in food, cosmetic, and industrial applications. [Filing No. 189-4 at 3.] Plaintiffs made their first purchase of colorants from Sensient in May 2012, followed by more purchases in subsequent months. [*See, e.g.,* Filing No. 95-3; Filing No. 95-6; Filing No. 95-7; Filing No. 95-8; Filing No. 189-6.] Plaintiffs mixed those colorants into their seed treatments to create the final blends sold to customers. [Filing No. 189-1 at 3.] The colorants that Plaintiffs purchased from Sensient were manufactured by Spectra.[1] [Filing No. 190 at 12.]

[1] Plaintiffs allege in their Third Amended Complaint that Sensient misrepresented itself as the manufacturer of the colorants, when in fact Spectra was the manufacturer. [Filing No. 95 at 15.] Sensient does not directly address this allegation in its statement of material facts not in dispute, [Filing No. 190], and the Court notes it here by way of background.

Beginning in the spring of 2013, Plaintiffs received complaints from customers that their seed treatments had "hardened" and become unusable.[2] [Filing No. 189-1 at 25-26.] After investigating those complaints, Plaintiffs became convinced that Sensient's colorants were the source of the problem, and they notified Sensient of the issue. [Filing No. 189-1 at 25-26.] Sensient claims that after learning of the complaints from Plaintiffs, it investigated by speaking to Spectra.[3] [Filing No. 190 at 12 (citing Filing No. 189-14 at 16).] After conducting its own examination, Spectra discovered that some of the red colorants it sold to Sensient "had a greater level of ammonia than originally contemplated." [Filing No. 195 at 2; Filing No. 189-14 at 15.] As a result of the customer complaints, Plaintiffs provided credits and/or replacements to some of their customers. [Filing No. 189-1 at 28-29.]

Plaintiffs filed suit in this Court against Sensient, raising six claims: (1) fraud and constructive fraud; (2) breach of contract; (3) breach of express warranty; (4) breach of the implied warranty of merchantability; (5) breach of the implied warranty of fitness for a particular purpose; and (6) violation of the Indiana Products Liability Act ("IPLA"). [Filing No. 95.] Sensient then filed a third-party complaint against Spectra, alleging that Spectra owes Sensient a duty to defend and a duty to indemnify Sensient against Plaintiffs' claims. [Filing No. 44 at 12-13.]

Sensient moved for summary judgment both on Plaintiffs' claims against it and on its claims against Spectra, [Filing No. 189], which Plaintiffs and Spectra opposed, [Filing No. 195; Filing No. 197]. After the parties' summary judgment briefing was complete, Plaintiffs and Sensient reached a settlement on Plaintiffs' claims, and the parties have filed a stipulation of

---

[2] Plaintiffs allege that Sensient did not inform them that Spectra was the manufacturer until April 2014, approximately one year after the onset of consumer complaints. [Filing No. 95 at 13.]

[3] Spectra appears not to dispute this fact, stating that its former general manager "analyzed the issues Plaintiffs identified with their seed treatments." [Filing No. 195 at 2.]

dismissal as to those claims. [Filing No. 253; Filing No. 254.] Accordingly, the only issue remaining for resolution on summary judgment is whether Spectra is required to defend and indemnify Sensient. [Filing No. 253.] That issue is now ripe for the Court's review.

## II.
## LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir.

2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## III.
## DISCUSSION

Sensient argues that it is entitled to summary judgment on its third-party complaint against Spectra, contending that as a matter of law, Spectra is required to defend and indemnify it. [Filing No. 190 at 33.] Sensient relies on a provision that appears in the "Terms and Conditions that governed [Sensient's] purchase of the pearlescent colorants from Spectra," contending that the provision establishes an absolute duty to defend and indemnify. [Filing No. 190 at 34.] Sensient argues that "the undisputed facts are that Spectra manufactured a defective batch of pearlescent

colorants with too much ammonia, and Olympus alleged in good faith it had incurred damages caused by the ammonia defect. On these facts alone, Spectra should be ordered to defend and indemnify Sensient." [Filing No. 190 at 35.]

Spectra disputes Sensient's allegation that Spectra manufactured a batch of colorants with "too much ammonia." [Filing No. 195 at 2-3.] But even if excess ammonia were involved, Spectra argues, Plaintiffs' claims actually arise out of Sensient's own acts or omissions, and not out of any product defect. [Filing No. 195 at 5.] Spectra argues that is not required to defend or indemnify Sensient for its own independent misrepresentations, concealment, or contractual breaches involving Plaintiffs. [Filing No. 195 at 6.] In reply, Sensient argues that Plaintiffs' claims all arise out of the allegedly defective product, and therefore fall within the language of the indemnity provision. [Filing No. 208 at 21.]

Despite moving for summary judgment on an issue of contract interpretation, Sensient neither cites to nor attaches a copy of that contract to its motion or briefing. Instead, it cites only to the indemnification and defense provision it contends is at issue, as referenced in Spectra's responses to Sensient's first set of interrogatories and request for admission.[4] [Filing No. 208 at 19 (citing Filing No. 189-15 at 3).] Missouri law[5] is clear that in interpreting a contract, the court reviews "the terms of the contract as a whole, not in isolation," *Tuttle v. Muenks*, 21 S.W.3d 6, 11-12 (Mo. Ct. App. 2000), and that "each clause must be read in the context of the entire contract,"

---

[4] Of course, it is possible that a copy of the relevant document has been submitted elsewhere in the voluminous filings in this matter. However, as this Court and the Seventh Circuit have repeatedly cautioned litigants, district courts are not required to scour the record searching for evidence in support of a claim. *See, e.g.*, *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994).

[5] The parties agree that Missouri law applies to the purported agreement under which Sensient seeks contractual indemnification and defense. [Filing No. 195 at 4; Filing No. 208 at 19.]

*State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. 2017). *See also Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc.*, 2016 WL 468647, at *4 (E.D. Mo. Feb. 8, 2016), *reconsideration denied*, 2016 WL 827934 (E.D. Mo. Mar. 3, 2016) ("In construing a contract, a court must give all contract terms their plain and ordinary meaning and consider the whole document. … Courts must not interpret contract provisions in isolation but rather evaluate the contract language as a whole.") (citing *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008); *Jackson County v. McClain Enters.*, 190 S.W.3d 633, 640 (Mo. Ct. App. 2006); *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135 (Mo. 2009)).

This omission leaves the Court unable to determine, based on admissible evidence, whether there was a valid and enforceable contract between Sensient and Spectra at all. But even assuming there were a valid contract, the Court cannot determine its parameters, including the meaning of the cited contractual term, without being able to review the contract itself. In addition to the issue of the relationship of that particular provision to other provisions and the contract as a whole, there are a variety of other inquiries that would inform the Court's analysis. For example, Spectra alleges that the provision appears on a form purchase order. [Filing No. 189-15 at 3.] Under Missouri law, the placement details of an indemnification provision on a form contract can be important factors in the determining enforceability and interpretation of that provision. *See, e.g.*, *Burcham v. Procter & Gamble Mfg. Co.*, 812 F. Supp. 947, 948 (E.D. Mo. 1993) (concluding that "[u]pon review of the contract…the Court concludes that the indemnity provision at issue here is not sufficiently conspicuous to warrant its enforcement. The provision appears in small print on the back of a boiler plate purchase order form supplied to Bazan by P & G. It is surrounded by unrelated terms and is not highlighted, printed in bold type or otherwise set apart from the other provisions in the contract in order that a contractor such as Bazan would note its inclusion in the

contract. Where a provision appears on the back of a printed form surrounded by unrelated terms, it is not conspicuous and may not be enforced.") (citation omitted). The Court, therefore, must deny Sensient's Motion for Summary Judgment.

The Court notes, however, that even if the Court conducted the analysis argued by Sensient—interpreting the single contractual provision in isolation from the rest of the contract—the Court could not conclude that the provision provides the wide-ranging coverage asserted by Sensient. The provision reads as follows:

> Seller shall defend and save buyer harmless against all damages, liabilities, claims, losses, costs, expenses, penalties, or fines, including reasonable attorney fees, arising out of or resulting in any way from any actual or alleged defect in the goods or services purchased hereunder or from any act or omissions of seller, its agents, employees, or subcontractors with respect to such goods or services. Seller agrees to reimburse buyers for any losses or expenses incurred or suffered by buyer, including reasonable attorneys' fees, for seller's failure to timely perform any of its obligations hereunder.

[Filing No. 189-15 at 3.] While Sensient argues that this language requires Spectra to indemnify and defend it against all of Plaintiffs' claims, the Court need only discuss one example to demonstrate why Sensient is not entitled to summary judgment on the scope of the subject provision.

Among the six counts Plaintiffs allege against Sensient is a claim for fraud, including fraud in the inducement. In that claim, Plaintiffs allege that Sensient made material misrepresentations of past and existing fact, including that Sensient (not Spectra) was the manufacturer of the colorants, in order to induce Plaintiffs to contract with Sensient. [Filing No. 95 at 15.] "Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." *Lightning Litho, Inc. v. Danka Indus., Inc.*, 776 N.E.2d 1238, 1241 (Ind. Ct. App.

2002).[6] A claim for fraud consists of five elements: (1) the defendant made at least one representation of a past or existing fact; (2) the representation was false; (3) the representation was made with knowledge of its falsity or reckless ignorance of its falsity; (4) the plaintiff reasonably relied on the representation; and (5) the representation caused harm to the plaintiff—in the case of inducement, the harm being the inducement to contract. *See* *Scott v. Bodor*, 571 N.E.2d 313, 320 (Ind. Ct. App. 1991); *see also* *7E Fit Spa Licensing Grp. LLC v. Dier*, 2016 WL 4943824, at *7 (S.D. Ind. Sept. 16, 2016).

This claim does not depend on the existence of a defect or an alleged defect in the goods sold by Spectra: it involves only the contractual relationship between Plaintiffs and Sensient, and whether Plaintiffs were fraudulently induced to enter into that relationship. The indemnification, however, by its own terms, applies only to damages, losses, etc. "arising out of or resulting in any way from any actual or alleged defect in the goods or services purchased hereunder." [Filing No. 189-15 at 3.] Therefore, at a minimum, the language of the indemnification provision (considered in isolation) cannot be read to require the defense or indemnification of Plaintiffs' fraud in the inducement claim.[7]

## IV.
## CONCLUSION

The issue of defense indemnity is usually a matter of contract construction, proper for resolution on summary judgment. However the paucity of both evidence and developed argument in this case preclude resolution based on the instant motion. For the reasons described above, the

---

[6] The parties appear to agree that Indiana law applies to Plaintiffs' claims. [*See* Filing No. 190.]

[7] The Court need not conduct this analysis regarding each of Plaintiffs' claims. The Court cites this example simply to illustrate that even if the Court could review the provision in isolation, which it cannot, summary judgment would be inappropriate.

Court **DENIES** Sensient's Motion for Summary Judgment, [189], as to its third-party claim against Spectra. The Court requests that the magistrate judge conduct a status conference to determine the most efficient course to bring the case to final resolution.

Date: 1/23/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Joel E. Cape
CAPE LAW FIRM PLC
joel@jcapelaw.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Kori Flake
KOPKA PINKUS DOLIN PC
keflake@kopkalaw.com

Jason Levin
STEPTOE & JOHNSON LLP
jlevin@steptoe.com

Kelly D.H. Lowry
THE LAW OFFICES OF KELLY D.H. LOWRY, P.C.
kelly@kellydhlowry.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Travis W. Montgomery
PARR RICHEY OBREMSKEY FRANDSEN & PATTERSON LLP
twmontgomery@kopkalaw.com

Leslie B. Pollie
KOPKA PINKUS DOLIN PC
lbpollie@kopkalaw.com

Christopher S. Stake
DELANEY & DELANEY LLC
cstake@delaneylaw.net

Libretta P. Stennes
STEPTOE & JOHNSON LLP
lstennes@steptoe.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Paul Younger
THE LAW OFFICES OF PAUL YOUNGER, PLLC
pyounger@youngerlawfirm.com