UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIRECT ENTERPRISES, INC., OLYMPUS SEED TREATMENT FORMULATOR, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:15-cv-01333-JMS-TAB |
| SENSIENT COLORS LLC, SPECTRA COLORANTS, INC., | ) ) ) | |
| Defendants. | ) ) | |
| SENSIENT COLORS LLC, | ) ) | |
| Third Party Plaintiff, | ) ) | |
| v. | ) ) | |
| SPECTRA COLORANTS, INC., | ) ) | |
| Third Party Defendant. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52

Following the stipulated dismissal of many claims in this action, Third-Party Plaintiff Sensient Colors, LLC ("Sensient") and Third-Party Defendant Spectra Colorants, Inc. ("Spectra") seek to resolve the issue of whether Spectra owes Sensient a contractual duty to defend in the instant suit. The parties have agreed to resolve this claim pursuant to Federal Rule of Civil Procedure 52(a), under which the action is tried on the facts to the Court without a jury. Fed. R. Civ. P. 52(a). The parties have submitted stipulated proposed findings of fact, [Filing No. 282], as well as their proposed conclusions of law, [Filing No. 283; Filing No. 284]. The claim is

therefore ripe for the Court's resolution, and the Court sets forth below its findings of fact and conclusions of law.

# I.
## FINDINGS OF FACT

Plaintiffs Direct Enterprises, Inc. ("DEI") and Olympus Seed Treatment Formulator, Inc. ("Olympus") are in the business of creating made-to-order seed treatments, which are mixtures of fungicides, insecticides, polymers, and colorants that farmers apply to seeds before planting. Spectra is a manufacturer of colorants, and Sensient sells seed treatment components. Olympus purchased colorants from Sensient, and those colorants were manufactured by Spectra. Spectra knew that Sensient was selling the colorants to a third-party end-user but was never informed of the identity of that end-user. Sensient's orders of colorants from Spectra were done pursuant to purchase orders, which all contained the following term:

> 9. INDEMNITY. Seller shall defend and save buyer harmless against all damages, liabilities, claims, losses, costs, expenses, penalties, or fines, including reasonable attorney fees, arising out of our resulting in any way from any actual or alleged defect in the goods or services purchased hereunder or from any act or omissions of seller, its agents, employees, or subcontractors with respect to such goods or services. Seller agrees to reimburse buyer for any losses or expense incurred or suffered by buyer, including reasonable attorneys' fees, for seller's failure to timely perform any of its obligations hereunder.

The purchase order does not define the terms "arising out of" or "resulting in any way from," and there are no other references to the duty to defend in that document.

# II.
## CONCLUSIONS OF LAW

In its Third-Party Complaint, Sensient seeks declaratory relief against Spectra, asking the Court to determine whether, and if so, to what extent Spectra is obligated under the terms of the

purchase orders to defend Sensient and/or to reimburse Sensient for defense costs related to defending this action.[1] The parties agree that, pursuant to the terms of the parties' purchase orders, Missouri law governs this dispute.

Written contracts must be construed as a whole in light of the object, nature, and purpose of the agreement. *Wilshire Const. v. Union Elec. Co.*, 463 S.W.2d 903, 906 (Mo. 1971). If a contract's terms are clear and unambiguous, courts enforce the contract according to the plain meaning of its words. *Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc.*, 163 S.W.3d 910, 913 (Mo. 2005); *see also Contract Freighters, Inc. v. J.B. Hunt Transp.*, 245 F.3d 660, 663 (8th Cir. 2001). It is well-settled that "though they may be contained in a single contractual provision, a duty to defend is independent of a duty to indemnify." *Travelers Indem. Co. v. S.M. Wilson & Co.*, 2005 WL 3143779, at *2 (E.D. Mo. Nov. 23, 2005) (citing *Burns & McDonnell Eng'g Co., Inc. v. Torson Const. Co., Inc.,* 834 S.W.2d 755, 758 (Mo. Ct. App.1992) (duty to defend is independent of duty to indemnify)).

In the insurance context, "[t]he duty to defend is broader than the duty to indemnify." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. 1999). The duty to defend arises "whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not [dependent] on the probable liability to pay based on the facts ascertained through trial." *Id.* The existence of the duty is determined by comparing the language of the agreement with the allegations in the complaint. *Id.* The complaint need only allege facts that give rise to a claim "potentially" within the agreement's coverage in order to trigger a duty to defend. *McCormack*, 989 S.W.2d at 170-71; *see also Shapiro Sales Co.*

---

[1] Sensient and Spectra have agreed that if Sensient were to prevail on the duty to defend issue, the parties will submit separate facts and briefing on the issue of damages.

*v. Alcoa, Inc.*, 2006 WL 2228987, at *2 (E.D. Mo. Aug. 3, 2006) ("A party has the duty to defend claims falling within the scope of an agreement even though ultimately it may not be obligated to indemnify an indemnitee.").

The indemnitee "need only prove that one claim is covered to invoke [the indemnitor's] duty to defend all claims." *United Fire & Cas. Co. v. Realty Title Co.*, 2007 WL 428068, at *2 (W.D. Mo. Feb. 2, 2007) (citing *Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc.,* 300 F. Supp. 2d 888, 893 (E.D. Mo. 2004) ("The insurer's duty to defend arises when there is a *potential* liability set forth in the complaint ... [e]ven if some claims in the complaint are not covered, the presence of insured claims triggers a duty to defend.")); *see also Lampert v. State Farm Fire & Cas. Co.,* 85 S.W.3d 90, 94 (Mo. Ct. App. 2002) (finding that the existence of one potentially covered claim gave rise to a duty to defend, "even though claims beyond the coverage, such as the fraud claim, may also be present").

The Court notes that the duty-to-defend legal standard described above has largely been expounded in the insurance law context. Here, no insurance policy is at issue, but rather a contractually assumed duty to defend. At least regarding how the duty to defend is triggered, courts applying Missouri law appear to invoke the standard articulated in the insurance context, although with no explanation as to the differing contexts. *See, e.g., Cravens v. Smith*, 610 F.3d 1019, 1028 (8th Cir. 2010) (applying standards articulated in insurance context to contractual duty to defend); *Shapiro*, 2006 WL 2228987, at *2 (same). Therefore, the Court applies that standard to the issues before it.

The purchase order governed the terms of each sale of products between Spectra and Sensient, and the Court concludes from the instrument that, in broad terms, it effectuates the parties' intent to consummate a sale. The indemnity provision excerpted above provides the only

reference to the duty to defend. The contractual language states that Spectra "shall defend…[Sensient]…against all damages, liabilities, claims, losses, costs, expenses, penalties, or fines, including reasonable attorney fees, arising out of our [sic] resulting in any way from any actual or alleged defect in the goods or services purchased hereunder" or from those same harms "arising out of or resulting in any way from…any act or omissions of Spectra…."

While Plaintiffs' original complaint does not contain any specific reference to Spectra, it alleges that after colorant was added to seed treatment mixtures, the mixtures became sludge-like and difficult, if not impossible to use for treating seed. [Filing No. 1 at 4.] It also alleges that Sensient notified Plaintiffs that "the colorants that were sent to Plaintiffs were incorrectly formulated." [Filing No. 1 at 4.] In that complaint, Plaintiffs raise five causes of action based on those factual allegations: breach of contract, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and deceit/constructive fraud. In subsequent amendments to that complaint, Plaintiffs added more specific allegations, as well as one additional claim, culminating in the Third Amended Complaint, [Filing No. 95].

Comparing the language of the purchase order with the allegations of the original complaint, the Court concludes that the facts as alleged give rise to a claim potentially within the purchase order's scope. *See McCormack*, 989 S.W.2d at 170-71. The contractual language regarding duty is broad, and it states that Spectra shall defend Sensient against all claims "arising out of" or "resulting in any way from any actual or alleged defect in the goods" purchased. The breach of implied warranty claims, for example, allege that the defective colorants (which Sensient knew were Spectra's products) were not suitable for use in seed treatments. Because the purchase order does not define the terms "arising out of" or "resulting in any way from," the Court follows

Missouri law and enforces the contract according to its plain meaning. *Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc.*, 163 S.W.3d 910, 913 (Mo. 2005). The Court concludes that claims for breach of warranty can be seen as "resulting from" or "arising out of" a defect in a component product, as alleged here. A reasonable reading of those claims is that a product defect in the colorants caused the product sold by Sensient to fail to perform as warranted, or to be unfit for use on seeds. Those claims, therefore, possibly arise out of the product defect.[2]

The Court notes again, however, that this is a contract dispute, and the Court must enforce the contract according to its unambiguous terms. The provision at issue limits Spectra's duties to defend and indemnify to those claims "arising out of" or "resulting in any way from" an alleged defect of the goods, or any act or omission by Spectra. The Court concludes that Plaintiffs' fraud claim falls outside the scope of this provision, because it relates solely to Sensient's conduct and representations regarding the actual manufacturer of the colorants. The parties should be mindful of this determination in their future briefing regarding the appropriate relief on the duty to defend issue.

Finally, the Court notes that in its proposed conclusions of law, Spectra asks the Court to conclude that the indemnity provision in the purchase order is not sufficiently conspicuous to be enforceable. Sensient contests Spectra's argument on a number of grounds including that Spectra has waived an enforceability defense; the UCC does not require indemnification provisions to be particularly conspicuous; and that the cases cited by Spectra in support of its argument apply only to indemnification provisions purporting to indemnify a party for its own negligence, which is not at issue here. The Court addresses Spectra's argument succinctly, concluding that even if an

---

[2] Sensient has not indicated when it first demanded defense from Spectra. The Court assumes this occurred following the filing of Plaintiffs' complaint.

indemnity provision such as this one is required to be conspicuous, the provision is sufficiently conspicuous in this instance. The terms and conditions applying to Sensient's purchase of goods appears on a single page, on the back of Sensient's purchase order. [Filing No. 282-1 at 2.] The terms are numbered one through seventeen, and they address issues ranging from payment to governmental regulations. [Filing No. 282-1 at 2.] Term nine is entitled "INDEMNITY" and it is listed in the same font, in the same layout, as all of the other provisions—whether pertaining to Spectra's or Sensient's behavior and obligations. Sensient and Spectra are both commercial entities, and therefore relatively sophisticated contracting parties. The Court cannot conclude that the provision at issue was inconspicuous or that it is unenforceable.

### III.
### CONCLUSION

For the reasons described above, the Court concludes that the allegations in Plaintiffs' complaint were sufficient to trigger Spectra's duty to defend under the terms of the applicable purchase order(s).

The parties have indicated that they intend to file supplemental briefing regarding the issue of damages. Prior to briefing, the Court requests that the magistrate judge confer with the parties to determine whether the remaining issue can be resolved by agreement. If not, Sensient is **ORDERED** to submit its briefing regarding requested damages within **fourteen days** following the conference with the magistrate judge, and Spectra is **ORDERED** to file its response within **fourteen days** of the filing of Sensient's briefing. The parties' briefing is limited to fifteen pages each. No reply is needed unless requested by the Court.

No partial final judgment shall issue at this time.

Date: 4/23/2018

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Joel E. Cape
CAPE LAW FIRM PLC
joel@jcapelaw.com

Anne L. Cowgur
TAFT STETTINIUS & HOLLISTER LLP
acowgur@taftlaw.com

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Kori Flake
KOPKA PINKUS DOLIN PC
keflake@kopkalaw.com

David A. Izzo
SELECTIVE STAFF COUNSEL OF INDIANA
david.izzo@selective.com

Jason Levin
STEPTOE & JOHNSON LLP
jlevin@steptoe.com

Kelly D.H. Lowry
THE LAW OFFICES OF KELLY D.H. LOWRY, P.C.
kelly@kellydhlowry.com

Eric C. McNamar
LEWIS WAGNER LLP
emcnamar@lewiswagner.com

Travis W. Montgomery
KOPKA PINKUS DOLIN PC (Carmel)
twmontgomery@kopkalaw.com

Lesie B. Pollie
KOPKA PINKUS DOLIN PC
lbpollie@kopkalaw.com

Christopher S. Stake
DELANEY & DELANEY LLC
cstake@delaneylaw.net

Libretta P. Stennes
STEPTOE & JOHNSON LLP
lstennes@steptoe.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Paul Younger
THE LAW OFFICES OF PAUL YOUNGER, PLLC
pyounger@youngerlawfirm.com